————o————

No. 4142.

(Court of Appeal, Parish of Orleans.)

## O'DONNELL AND HOLLINGSWORTH vs. AMERICAN UNION BENEVOLENT ASSOCIATION OF NEW ORLEANS.

1. Amendments are reducible to no certain rule; each case case must be left to the sound discretion of the Court.
2. An amendment should be permitted if it tends to the furtherance of justice, provided that amendments to the petition do not alter the substance of the demand, and those to the answer be not dilatory.
3. On the merits questions of fact only are involved which are resolved in favor of the plaintiff.

Appeal from Civil District Court, Division "D."

O'Donnell & Hollingsworth, for Plaintiff and Appellee.

Armand Romain, for Defendant and Appellant.

MOORE, J. On the 21st of October, 1895, certain persons,

361

seven in number, organized themselves by Notarial Charter under the provisions of Sec. 677 of the Revised Statues, into a corporation to be known as the American Union Benevolent Association of New Orleans. The objects of the Association was, as declared in the charter, "to aid the sick and to bury the dead" of those by complying with the rules and regulations of the Association were entitled to this beneficence. The plan of operation was on the order of a beneficial insurance association: Those who affiliated with it were repuired to pay a certain stipulated sum weekly, in return for which they were entitled to certain sick benefits in case of sickness and when those in good standing died and the family of the deceased was unable to bear the entire expenses of burial, the Association contributed thereto. Quite a large number of persons affiliated with the Association with the result that it proved a financial success and yielded considerable profits to the organizers.

The sole entire and exclusive management of the affairs of the Association was in the hands of four of the charterers, to-wit: Dr. E. A. Rappanier, C. H. Brockman, L. Rappanier and H. Franquez, who from the beginning held the offices respectively and in the order named, of President, Vice-President, Treasurer and Secretary, and they, by common consent of the others (the remaining three members being but nominal members) were to be the sole beneficiaries of the net profits and earnings of the Association in the proporation of one-fourth to each. After the discharge of all obligations and the setting aside of the special fund, regular divison of the profits of the Association between the parties named were made in the proportion stated every three months.

Sometime during the year 1897 Franquez, the Secretary, resigned, and one Coulon was elected in his stead. The division of profits was then changed, it being agreed that Dr. Rappanier should receive one-half and the other half equally divided between L. Rappanier, Treasurer, and Brockman, the Vice-President, or in other words, their proportion to remain as it originally was. Under this agreement the regular quarterly divisions were made and paid to all said three parties. On the 19th December, 1905, Brockman assigned to the plaintiffs herein all his earned profits due him from the 1st day of February,

362

1905, and upon the defendant corporation refusing the pay same suit followed. The defense is that Brockman "has severed his connections with the Association through resignation or voluntary absence and failure to attend; that he has been paid all that was due him and that he has or had no interest since his resignation or abandonment in said Association since the 1st Feby., 1905, when he was paid in full all interest due him for all services rendered. That since said date Brockman has rendered no services at all and has dropped out of said Association and failed to keep the books thereof for which he had formerly been paid."

The evidence is conclusive that Brockman neither resigned nor abandoned said Association. Some time in Feby., 1905, some family difficulty arose which estranged him from the Rappaniers, his associates, and he thenceforth, to use the expression of some of the witnesses failed to "show up;" his failure to attend the few meetings subsequently held is, in no sense, an abandonment of his rights to his share of the earnings of the Association. There is nothing either in the charter or the by-laws and regulations of the Association or in the agreement and compact of the parties which denounces the penalty of forfeiture of rights by a failure to attend meetings. It was sought to establish the fact that the condition upon which Brockman was to share in the profits and earnings of the Association was that he was to do the work of the Secretary; that he had done this work up to the time when he ceased to attend the meetings and that having failed to do the Secretary's work since that time he is not entitled to his share. No such condition was attached to his right to share in the profits. Both he and the Secretary testified that Brockman occasionally did the work of the Secretary, but it was simply as a favor and accommodation to the former and not because of any obligation on his part so to do. The Rappaniers testified to the contrary, but evidently the trial judge who saw and heard the witnesses was more impressed by the testimony of Brockman and Franquez than he was by that of the Rappaniers.

It is somewhat singular that notwithstanding the fact that it is considered by the latter that Brockman had abandoned the Association or had abandoned the duties of Secretary and thus was no longer entitled to share in the profits, the division of the

profits continued thenceforth the same as formerly—one-half to Dr. Rappanier, one-quarter to L. Rappanier, the Treasurer, and one-quarter to Brockman—the Vice-President, although Brockman's share was not paid to him.

The Treasurer (L. Rappanier) testified on behalf of the defendant on the 29th October, 1906, was asked and answered as follows:

Q. So that to-day the Doctor gets how much of the profits of the Association?

A. To-day the Doctor gets one-half out of the profits.

Q. And the Treasurer gets how much?

A. The Treasurer gets one-fourth.

Q. _And who gets the other fourth?_

A. _Mr. Brockman._

And he is asked by the Court:

Q. What is done with this one-fourth which used to be paid to Mr. Brockman?

A. How much that would be?

Q. No. What is now done with the money, that one-fourth of the profits that used to be paid to Mr. Brockman.

A. It is still there in the bank—all the money is still there in the bank.

Q. No one has received this money?

A. No, sir; nobody has received the one-fourth; nobody has received anything.

When asked why he ceased paying Brockman anything he answered: "Because he never came up there any more." This seems to have been the only reason for withholding Brockman's share of the profits duly ascertained, declared and set aside in bank. That Brockman had an undoubted right to clai mthis, may not be questioned, and now no less doubtful is his right to transfer and assign it. This is all he has done and this is all that plaintiff claims.

Plaintiffs by their original petition, alleging this assignment and transfer to them of their declared profits, prayed for payment for no specific sum but for an acounting and for judgment for such sum as the accounting might show to be due. On exception filed by defendant plaintiffs were allowed to amend which they did by claiming a specific sum as due. To

the supplemental petition an exception was interposed that it changed the nature of the demand. This exception was overruled and it is contended here that the ruling was error. We do not think so. The amendment was made before issue joined and it in no wise changed the substance of the demand. "Amendments are reducible to no certain rule; each case must be left to the sound discretion of the Court."

An amendment should be permitted if it tends to the furtherance of justice; provided that amendments to the petition do not alter the substance of the demand, and those to the answer be not dilatory.

Hennings Dig. Vol. 11, P. 1182 No. 9.

Our esteemed brother of the lower Court found that the share of the net profits coming to Brockman was four hundred and fifty dollars. There is no serious contention that this amount is due at all. At any rate this amount is fully proven to be due and therefore the judgment appealed from is affirmed.

May 20, 1907.

Rehearing refused June 17, 1907.

Writ denied by Supreme Court August 12, 1907.